Filed 10/25/22 P. v. Porter CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON ROBERT PORTER,<br><br>    Defendant and Appellant. | 2d Crim. No. B313385<br>(Super. Ct. No. 16F-06712)<br>(San Luis Obispo County) |

Jason Robert Porter appeals a judgment following conviction of sexual penetration or oral copulation with a child under the age of 10 years (seven counts); lewd acts on a child under the age of 14 years (eight counts); possession of child pornography; and misdemeanor invasion of privacy by means of a concealed camera or recorder (35 counts), with a finding of multiple victims under the age of 14 years. (Pen. Code, §§ 288.7,

subd. (b), 288, subd. (a), 311.11, subd. (c), 647, subd. (j)(3)(A), 667.61, subd. (j)(2).)[1]  We affirm.

*FACTUAL AND PRFo;eOCEDURAL HISTORY*

Over a period of years, Porter committed sexual offenses against four minor victims who were younger than 14 years old, including three victims younger than 10 years old.  Porter also induced minors to engage in sexual conduct that he filmed and photographed.

The victims were children of the long-time neighbor family L. with whom Porter and his family were friends.  In the evening of June 23, 2016, Mrs. L. found Porter taking an intimate photograph of her daughter.  Mrs. L. confronted Porter and her son called for police assistance.  Porter then threw his cellular telephone into a neighboring field.

Police Officer Jeff DePetro arrived and arrested Porter. DePetro retrieved the telephone from the field and looked at the images stored in it.  Mrs. L. also handed DePetro a digital camera that she took from Porter.  DePetro later went to Porter's home and, pursuant to a search warrant, searched his locked office. There, he recovered computers and camcorders, among other property.  The computers and cameras contained images of sexual acts between Porter, the L. children, and other children, actual and simulated sexual conduct between children, as well as images of a person using the Porters' guest bathroom.  Porter was identified in some videos and photographs by his watch and his voice.

Following a court trial, the court convicted Porter of seven counts of sexual penetration or oral copulation with a child under the age of 10 years; eight counts of lewd acts on a child under the

---

[1] All further statutory references are to the Penal Code.

2

age of 14 years; possession of child pornography; and 35 counts of misdemeanor invasion of privacy by means of a concealed camera or recorder. (§§ 288.7, subd. (b), 288, subd. (a), 311.11, subd. (c), 647, subd. (j)(3)(A).) It also found that Porter committed the criminal offenses against more than one victim under the age of 14 years. (§ 667.61, subd. (j)(2).) The court sentenced Porter to a five-year determinate term plus 280 years to life, ordered victim restitution, imposed various fines and fees, and awarded Porter 2,082 days of presentence custody credit. Except for the misdemeanor invasion of privacy convictions and one count stayed pursuant to section 654, the court imposed consecutive sentences for all convicted counts. In selecting sentence, the court found no factors in mitigation.

Porter appeals and contends that: 1) his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537-538, requires our independent review of the trial court's in camera hearing regarding police personnel files; and 2) Senate Bill No. 567, amending section 1170 regarding imposition of upper term sentencing, requires resentencing for count 17, possession of child pornography. (§ 311.11.) By supplemental brief, Porter also contends that his waiver of his right to a jury trial was not knowing and intelligently made, the advisements being defective.

*DISCUSSION*

*I.*

Porter requests that we review the in camera hearing and the sealed personnel records of Paso Robles Police Officers Jeffery DePetro and Christopher McGuire to determine whether the trial court failed to disclose all relevant and discoverable information contained within the files pursuant to *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531.

3

A defendant must establish good cause for discovery of a police officer's confidential personnel records that contain information relevant to the defense. (*Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531, 537-538.) Good cause is a " 'relatively low threshold' " and requires a showing that 1) the personnel records are material to the defense, and 2) a stated reasonable belief that the records contain the type of information sought. (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.) Good cause contemplates "a logical link between the defense proposed and the pending charge." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.)

When the trial court finds good cause and conducts an in camera review pursuant to *Pitchess*, it must make a record that will permit future appellate review. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1230.) A court reporter should memorialize the statements made by the custodian of the police personnel records and any questions asked by the court. (*Ibid.*) The court is afforded "wide discretion" in ruling on a motion for access to law enforcement personnel records. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180 [decision will be reversed only on a showing of abuse of discretion].)

Our review of the sealed personnel file and the transcript of the in camera hearing reveals that the trial court did not abuse its discretion by not disclosing further materials. The court properly conducted the *Pitchess* hearing and further sealed personnel documents were not subject to disclosure.

## II.

Porter argues that the recent enactment of Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3) requires a remand for resentencing pursuant to section 1170, subdivision (b), as

4

amended.  The Attorney General concedes that the recent amendment applies retroactively to Porter, but contends that any error is harmless beyond a reasonable doubt.  (*In re Estrada* (1965) 63 Cal.2d 740, 745 [amendments to statutes that reduce punishment for crime apply to all defendants whose judgments are not yet final].)

The trial court imposed an upper term sentence for count 17, possession of child pornography.  (§ 311.11.)  The court found no factors in mitigation of sentence and six factors in aggravation of sentence, including the factor of multiple victims who were particularly vulnerable.

In imposing consecutive sentences, the trial court relied upon the following aggravating factors:  1) the crimes involved great violence and cruelty; 2) the multiple victims were particularly vulnerable; 3) the manner of commission of the crimes indicated planning and sophistication; 4) defendant possessed a large amount of contraband (child pornography); 5) defendant took advantage of a position of trust or confidence; and 6) defendant presents a serious danger to society.  (Cal. Rules of Court, rule 4.421(a) & (b).)

Senate Bill No. 567, which became effective January 1, 2022, amended section 1170 by making the middle sentencing term the presumptive sentence unless certain circumstances exist.  (Adding § 1170, subd. (b)(1), (2), (3).[2])  Pursuant to the

---

[2] Section 1170, subdivision (b)(1), (2), (3) reads:
**"(b)(1)** When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).
**"(2)** The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime

amendment, the trial court may impose an upper term sentence only where there are circumstances in aggravation and the facts underlying those circumstances have been stipulated by the defendant or found true beyond a reasonable doubt by the fact-finder.  The court may also rely upon certified records of the defendant's prior convictions.

Any fact-finding error here is harmless beyond a reasonable doubt because the trial court "unquestionably would have found true" (and did find) at least one aggravating circumstance beyond a reasonable doubt.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.)  A single aggravating factor is sufficient to support an upper term.  (*People v. Osband* (1996) 13 Cal.4th 622, 728; *People v. Flores* (2022) 75 Cal.App.5th 495, 500-501.)  Although the court stated the aggravating factors for consecutive sentences, the same factors apply to imposition of the upper term for count 17.

---

that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.
**"(3)** Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions."

During sentencing, the trial judge stated: "I've been doing this a long time, and I've seen a lot of things, and it was very difficult . . . for me to watch. . . . It was horrific. [E]ach of these survivors not only were they really young, in one case I think a [one] year old, but . . . they were sleeping. And a couple of times when Mr. Porter's anatomy . . . was in the picture, the child was asleep. . . . So to make sure that he never gets released [the court imposed consecutive sentencing]."

Remand for resentencing is unnecessary. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand for resentencing unnecessary where record " 'clearly indicate[s]' " trial court would have reached same conclusion even if it were aware of its discretion].) Here the court convicted Porter of crimes against four minor victims and the court cited Porter's vulnerable victims as one factor in aggravation. The court also relied upon the great quantity of pornography recovered at the Porter home. In addition, the court chose to impose consecutive, not concurrent sentences throughout the felony sentencing, indicating the court's reluctance to impose lesser terms. Remand for resentencing is unnecessary and would be an idle act.

### III.

By supplemental brief, Porter asserts that he did not knowingly and intelligently waive his right to a jury trial pursuant to the totality of the circumstances. He contends that the waiver colloquy was devoid of advisements explaining the basic mechanics of a jury trial. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 169-170; *id.* at p. 169 [recommending a "robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial"].) Porter argues that the error is structural, compelling reversal of the judgment.

In April 2017, the San Luis Obispo County District Attorney filed a 59-count information against Porter. Porter was represented by counsel until May 2019, when he exercised his rights pursuant to *Faretta v. California* (1975) 422 U.S. 806. Thereafter, for approximately two years, Porter represented himself and filed motions for discovery and to suppress evidence, among others. Porter also engaged with the prosecutor and the trial court in setting jury trial dates, dates for summoning of panels, and rescheduling.

In May 2021, Porter sought reappointment of counsel. On May 21, 2021, the trial court reappointed counsel and this colloquy ensued concerning a jury trial:

Porter: "[M]y decision or request would be that we have a trial by court. And as far as I'm informed, [the prosecutor] has agreed to that. So I'm willing to waive my right to a jury trial and proceed straight to a court trial."

The prosecutor: "The People would waive jury if that's what the defendant is requesting."

The Court [speaking to defense counsel]: "And you agree that Mr. Porter understands his right to a jury trial. You've discussed it thoroughly with him. And you believe it's in his best interest to waive jury?"

Defense Counsel: "Correct."

The Court: "All right. Then I'll accept the waivers from the defendant and from the People. And we will proceed with a bench trial."

In *Sivongxxay*, our Supreme Court offered general guidance to ensure that a defendant's jury trial waiver is knowing and intelligent. The court recommended that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver

8

colloquy, including that a jury is comprised of 12 members of the community, the defendant through counsel may participate in jury selection, all 12 jurors must unanimously agree to render a verdict, and if a defendant waives his right to a jury trial, a judge alone will decide his or her guilt or innocence. (*People v. Sivongxxay, supra*, 3 Cal.5th 151, 169-170.) Our Supreme Court also recommended that the trial court take additional steps to ensure on the record that the defendant comprehends what the jury trial right entails, e.g., by asking whether the defendant had an adequate opportunity to discuss the decision with his attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he understands the right being waived. (*Ibid.*)

Failure to follow the *Sivongxxay* guidelines does not necessary result in the absence of a knowing and intelligent waiver, however. Instead, we examine the totality of the circumstances. (*People v. Sivongxxay, supra*, 3 Cal.5th 151, 167.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. . . . Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id.* at p. 170, citations omitted.)

Considering the totality of the circumstances, we conclude that Porter knowingly and intelligently waived his right to a jury trial. (*People v. Morelos* (2022) 13 Cal.5th 722, 753 [review of jury waiver considers the totality of circumstances "unique to each case"].) Porter initiated the request for a court trial and the record reveals no hesitation by Porter in entering the waiver or

any confusion regarding the consequences of the waiver.  Porter, in propria persona, had scheduling discussions with the court for approximately two years regarding a jury trial date and impaneling of a jury.  Moreover, defense counsel informed the court that Porter understood his right to a jury trial and that it had been "discussed . . . thoroughly" by counsel.  We presume counsel is competent and informed regarding constitutional and statutory law, including jury trial concerns.  (*People v. Barrett* (2012) 54 Cal.4th 1081, 1105.)  The circumstances unique to this case indicate that Porter's jury trial waiver was valid.  (*People v. Doyle* (2016) 19 Cal.App.5th 946, 953 [waiver of jury trial valid because defense counsel discussed waiver with defendant on two occasions and "[t]here is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right"].)

*DISPOSITION*

The judgment is affirmed.

NOT TO BE PUBLISHED.



GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.

10

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.